**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Christian,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-18-08107-PCT-JZB<br><br>**ORDER** |

Plaintiff Carol Christian seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and the matter remanded for an further proceedings consistent with this Order.

**I.    Background.**

On August 20, 2014, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning June 1, 2011. On February 8, 2017, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On April 13, 2017, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals

1 | Council denied Plaintiff's request for review of the hearing decision, making the ALJ's
2 | decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate non-disability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe"

medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2016, and that she has not engaged in substantial gainful activity since June 1, 2011. (AR at 20.) At step two, the ALJ found that Plaintiff has the following severe impairments: unspecified myalgia/myositis, history of obesity, status-post gastric bypass, mild degenerative changes of the cervical spine, depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) except lift and carry 20 pounds occasionally, ten pounds frequently; stand or walk for six hours out of eight; sit for six hours out of eight; can occasionally climb stairs and ramps, never ropes, ladders, and scaffolds; occasionally stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold and heat, loud noise, and vibration; should avoid even moderate exposure to unprotected heights and moving and dangerous machinery; in addition she is unable to understand, remember, and carry out simple instructions and tasks; and should not work in a setting that requires constant or regular contact with the general public or more than infrequent handling of customer complaints.

(*Id.* at 22.)

The ALJ further found that Plaintiff is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the weight given to the assessments of the treating providers, and (2) the analysis of Ms. Christian's credibility. (Doc. 10 at 12, 17.) The Court will address each argument below.

### A.    Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Dr. Jane Barnwell, M.D., Dr. Kenneth Epstein, M.D., Dr. Heather Boyle, M.D., and Ms. Angela Rees, M.C.C., L.A.C. (*Id.* at 12-17.) The Court will discuss the ALJ's treatment of each opinion below.

#### 1.    Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d

at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quotations omitted). But "[t]he ALJ must do more than offer [his] conclusions. [He] must set forth [his] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. Jane Barnwell, M.D.

On March 28, 2014, Dr. Jane Barnwell, M.D., who is board certified in Physical Medicine and Rehabilitation, began treating Plaintiff. (AR 702.) Between March 2014 and March 2016, Dr. Barnwell continued treating Plaintiff on a consistent basis. (*See* AR 705-95.) On March 4, 2015, Dr. Barnwell completed a Fibromyalgia Questionnaire (AR 589-93), in which she opined that Plaintiff is only able to sit less than one hour, stand and walk less than one hour, lift no objects of any weight, and has no ability to use her hands in the workplace. (AR 589-93.) Dr. Barnwell further opined that these limitations "apply as far back as" June 1, 2011, Plaintiff's alleged disability onset det.

On July 16, 2015, Dr. Barnwell wrote a detailed narrative report of Plaintiff's condition. (AR 702-03.) In that report, Dr. Barnwell again found extreme limitations in terms of physical activity and endurance; moreover, Dr. Barnwell concluded that Plaintiff was incapable of working for at least the last 12 months and her condition was not likely to improve. (AR 703-04.)

Dr. Barnwell's medical opinion is contradicted by the opinion of the state's reviewing providers Dr. Lloyd Anderson, M.D. and Dr. Martha Goodrich, M.D. Drs. Anderson and Goodrich opined that Plaintiff had greater abilities than those identified in Dr. Barnwell's opinion. The ALJ can therefore discount Dr. Barnwell's opinion for

specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

Here, the ALJ assigns little weight to Dr. Barnwell's medical opinion, and provides three reasons for doing so: (1) Dr. Barnwell's opinion that Plaintiff was impaired on June 1, 2011, is "speculative at best" because she did not start treating Plaintiff until March 28, 2014 (AR 25); (2) Dr. Barnwell's opinion conflicts with Plaintiff's report that she was studying to be a Certified Nurse Assistant (AR 402, 592-93); and (3) Dr. Barnwell's opinion is inconsistent with her own findings in the record.

### a. Speculative Regarding Limitations Prior to Treatment.

The ALJ's first reason for discounting Dr. Barnwell's medical opinion is that it is "speculative at best" regarding Plaintiff's condition prior to March 2014, when Dr. Barnwell first started treating Plaintiff. (*Id.* at 25.) The duration of the treatment relationship and the frequency and nature of the patient contact is relevant in weighing medical opinion evidence. *Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003).

The Court finds that the ALJ's first reason for discounting Dr. Barnwell's opinion is not specific or legitimate. To be sure, Dr. Barnwell met with and examined Plaintiff for the first time on March 28, 2014, so Dr. Barnwell had no first-hand knowledge of the first three years of Plaintiff's alleged disability; but neither did any other consulting or examining physician, including the State Agency physicians, to whom the ALJ gave great weight. The Court finds the ALJ's first reason is not legitimate for discounting Dr. Barnwell's opinion.

However, because the ALJ provided other legally sufficient reasons for discounting Dr. Barnwell's opinion, to the extent the ALJ erred on this point, the error was harmless. *See Molina*, 674 F.3d at 1111 (an error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate non-disability determination).

### b. Inconsistent with Record as a Whole.

The ALJ's second reason for discounting Dr. Barnwell's medical opinion is that the

record does not support the limitations in Dr. Barnwell's assessment. (AR 25.) An ALJ may give less weight to a doctor's opinion when it is inconsistent with the overall record. 20 C.F.R. § 404.1527(c)(4); *Messinger v. Comm'r of Soc. Sec. Admin.*, No. CV-16-02529-PHX-DGC, 2017 WL 2351663, at *4 (D. Ariz. May 31, 2017) ("When evaluating a physician's opinion, an ALJ may consider inconsistencies between the physician's treatment and the physician's recommended limitations.").

Here, the ALJ found Dr. Barnwell assessment that Plaintiff could not use her hands (AR 592-593), inconsistent with Dr. Barnwell's treatment reports which frequently find that Plaintiff had normal strength and fine motor control in her hands. (AR 707, 710, 713, 718, 721, 724). The Court finds this to be a specific and legitimate reason for discounting Dr. Barnwell's medical opinion.

Plaintiff argues that "the ALJ does not explain how the normal exam findings that are cited conflict with Dr. Barnwell's limitations." (Doc. 16 at 3.) The Court disagrees. The ALJ plainly provides that

> The treatment notes from Dr. Barnwell consistently note normal fine motor control and that any deficits in motor strength are secondary to subjective complaints of pain symptoms. . . . As such, the treatment notes from Dr. Barnwell do not support the opinion that the claimant has no use of her hands for any manipulative activity.

(AR 25.) Put simply, Dr. Barnwell's notes that evidence Plaintiff's normal control or her hands contradict his opinion stating Plaintiff has no use of her hands. Accordingly, the Court finds that the ALJ's second reason for discounting Dr. Barnwell's opinion is specific and legitimate.

### 3. Dr. Kenneth Epstein, M.D.

Dr. Kenneth Epstein, M.D., is a Rheumatologist who personally examined Plaintiff on at least one occasion, in April 2012.[1] (AR 396-401 (April 3, 2012).) On October 4, 2014,

---

[1] The Court notes that, according to treatment notes in the record, a nurse practitioner at Dr. Epstein's practice, Laurie A. Steinhaus, NP, examined Plaintiff at least 10 additional times between April 2012 and January 2014. (*See, e.g.*, AR 402-07 (April 24, 2012); 408-11 (May 15, 2012); 412-15 (May 25, 2012); 416-19 (June 12, 2012); 420-24 (September 11, 2012); 425-28 (December 18, 2012); 429-32 (May 21, 2013); 433-35 (July 30, 2013); 436-38 (November 5, 2013); 439-41 (January 8, 2014).)

Dr. Epstein, filled out a Fibromyalgia Questionnaire concerning Plaintiff's condition. (AR 583.) Therein, Dr. Epstein opined that Plaintiff suffers from severe physical limitations. Specifically, Dr. Epstein stated that, in an eight-hour workday, Plaintiff can:

- sit for two hours and for no more than 15-20 minutes at a time,
- stand for one hour and for no more than 5-10 minutes at a time,
- occasionally lift or carry up to 10 pounds and never more than 10 pounds,
- never grasp turn and twist objects,
- never use her hands/fingers for fine manipulation, and
- never use her arms for reaching.

(AR 586.) Dr. Epstein further opined that Plaintiff's symptoms would increase if placed in a competitive work environment due to stress. (AR 587.) Additionally, in an eight-hour work day, Plaintiff would require unscheduled 10-15 minute breaks every 30-60 minutes for rest, and would be absent from work more than three times per month as a result of her impairments. (AR 587.)

Dr. Epstein's medical opinion was contradicted by the opinion of state reviewing physicians Dr. Anderson and Dr. Goodrich. Drs. Anderson and Goodrich opined Plaintiff had greater abilities than those identified in Dr. Epstein's opinion. The ALJ could therefore discount Dr. Epstein's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

The ALJ first finds that Dr. Epstein is not considered a treating physician under SSR 96-2p. Specifically, the ALJ notes that the record shows only one occasion on which Dr. Epstein examined Plaintiff, and states that "[o]ne visit with a provider does not constitute a treating relationship." (AR 25.) The ALJ then affords Dr. Epstein's opinion little weight. (AR 26.)

In support of his decision to discount Dr. Epstein's medical opinion, the ALJ provides only a single paragraph of explanation:

> Dr. Epstein opined similar limitations [as Dr. Barnwell] in his questionnaire (Exhibit 11F). He also stated that he treated the claimant ever six to 12 months from April 3, 2012 through January 8, 2014 (Exhibit 11F). As discussed above, not even that level of frequency of treatment is supported

> by the notes from his practice. Furthermore, the records do not support the level of limitation on the use of the hands or on the claimant's need for constant unscheduled breaks.

(AR 26.) Out of that sparse analysis, the Court identifies two reasons raised by the ALJ in support of discounting Dr. Epstein's opinion: (1) Dr. Epstein's representation that he saw Plaintiff every 6-12 months is not supported by the treatment notes in the record, which reflect only one examination conducted by Dr. Epstein; and (2) "the records do not support the level of limitation on the use of hands or on the claimant's need for constant unscheduled breaks." (AR 26.)

### a. Inconsistent with Treatment Notes.

The ALJ's first reason for discounting Dr. Epstein's opinion is that it contains a representation of how frequently Dr. Epstein saw Plaintiff that is inconsistent with the treatment notes in the record. (AR 25-26.) A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) *citing Molina,* 674 F.3d at 1111–12 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692–93 (9th Cir.2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion).

Here, it is undisputed that Dr. Epstein's practice examined Plaintiff regularly between 2012 and 2014. Indeed, the record clearly shows it was Dr. Epstein who directed Plaintiff to continue follow-up visits with his Nurse Practitioner, Ms. Steinhaus. (AR 400.) Nevertheless, the record contains no indication that Dr. Epstein saw Plaintiff as frequently as he states in his opinion.

But even accepting that Dr. Epstein's representation regarding how frequently he saw Plaintiff is inconsistent with the treatment notes in the record, the ALJ fails to identify how that inconsistency warrants anything more than weighing Dr. Epstein's medical opinion as an examining physician rather than a treating physician. Unlike the physicians

in *Ghanim*, *Molina*, or *Valentine*, whose medical opinion as to their patient's limitations was inconsistent with their treatment notes and thus properly discounted or rejected; here, the ALJ points to no such medical inconsistency in Dr. Epstein's opinion. At most, the ALJ identifies that Dr. Epstein was not a treating physician and thus was not entitled to potentially controlling weight under 20 C.F.R. § 404.1527(c).[2] To be sure, neither the ALJ nor the Commissioner provides any explanation as to why Dr. Epstein's medical opinion must be discounted because of his infrequent treatment of Plaintiff, but both non-examining state physicians' medical opinions are entitled to great weight despite having only reviewed Plaintiff's medical records.

### b. Inconsistent with Record as a Whole.

The ALJ's second reason for discounting Dr. Epstein's medical opinion is that "the records do not support the level of limitation on the use of hands or on the claimant's need for constant unscheduled breaks." (AR 26.) An ALJ can reject a treating physician's statement if it is "unsupported by the record as a whole or by objective medical findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). But specific evidence must support this finding. *Id.* at 1138; *Spendlove v. Comm'r*, No. CV-17-08157-PCT-DGC, 2018 WL 3633744, at *3 (D. Ariz. July 31, 2018) (ALJ did not properly reject doctor's opinion where he did not identify any specific inconsistency within the notes).

Here, the ALJ fails to provide any explanation as to how Dr. Epstein's opinion is inconsistent with the record beyond a generic, conclusory, assertion that "the records do not support the level of limitation on the use of hands or on the claimant's need for constant unscheduled breaks." (*See* AR 25-26.) Such bare and conclusory analysis is error. *See Embrey*, 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions. He must

---

[2] To the extent the ALJ declined to treat Dr. Epstein as a treating physician, the ALJ was still obligated to evaluate Dr. Epstein's medical opinion under the factors set forth in 20 C.F.R. § 404.1527(c), which he did not do. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (holding that an ALJ committed reversible legal error when, after finding that a treating physician opinion was "inconsistent with the other substantial evidence in [the] case record,' such that it should not be given dispositive weight," the ALJ "did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" as required in 20 C.F.R § 404.1527(c)(2)-(6)).

set forth his own interpretations and explain why they, rather than the doctors', are correct."). Accordingly, the Court finds that the ALJ's second reason for discounting Dr. Epstein's medical opinion is not specific and legitimate. Because the ALJ did not provide a specific and legitimate reason for discounting Dr. Epstein's opinion, the ALJ erred by doing so.

### 4. Dr. Heather Boyle, M.D., and Ms. Angela Rees, M.C.C., L.A.C.

Dr. Heather Boyle, M.D., is Plaintiff's treating psychiatrist, who started treating Plaintiff in April 2014. (AR 577.) Dr. Boyle met with Plaintiff approximately every three months between April 2014 and April 2016.[3] During Plaintiff's visits to Dr. Boyle, Ms. Angela Rees, M.C.C., L.A.C., would frequently assist in psychotherapy. (*See* AR 830-48.)

On September 12, 2014, Dr. Boyle completed a mental impairment questionnaire for Plaintiff. (AR 577-81.) Therein, Dr. Boyle opined that Plaintiff has the following conditions: "PTSD; ADHD; MDD, moderate; somatic symptom disorder; pain; fibromyalgia; and gastric bypass." (AR 577.) Dr. Boyle further indicated that Plaintiff has "marked limitations" performing various mental activities on a sustained and ongoing basis, including:

- sustaining ordinary routine without supervision,
- working in coordination with or near others without being distracted by them,
- making simple work related decisions,
- completing a workday without interruptions from psychological symptoms,
- performing at a consistent pace without rest periods of unreasonable length or frequency,
- interacting appropriately with the public,
- accepting instructions and responding appropriately to criticism from supervisors,
- getting along with coworkers or peers without distracting them,

---

[3] *See* AR 829 (April 18, 2016); 830 (February 9, 2016); 831-32 (December 7, 2015); 833-34 (October 28, 2015); 835-36 (September 30, 2015); 837-38 (July 14, 2015); 839-40 (April 7, 2015); 841-42 (January 13, 2015); 843-44 (October 7, 2014); 847-48 (July 8, 2014); 849 (April 17, 2014).

- responding appropriately to workplace charges, and
- traveling to unfamiliar places or using public transportation.

(AR 580.) In the questionnaire, Dr. Boyle also opines that Plaintiff's symptoms detailed in the questionnaire apply back as far as June 1, 2011. (AR 581.)

On September 23, 2014, Dr. Boyle wrote a letter regarding Plaintiff's ability to work. (AR 582.) Specifically, Dr. Boyle opined that "Patient is limited in function due to the effects on mood, energy, sleep, pain, and cognition. Though it is expected to have fluctuation and improvement, her course is unlikely to include recovery to the degree that working would be recommended. I would definitely not recommend working in the next 12 months." (AR 582.)

On June 4, 2015, Ms. Rees completed a second mental health impairment questionnaire for Plaintiff. (AR 599-603.) Therein, Ms. Rees opined that Plaintiff has "marked limitation" completing a workday without interruptions from psychological symptoms, and "moderate-to-marked limitation" performing at a consistent pace without rest periods of unreasonable length or frequency, but no other mental activity listed is more than moderately limiting in a work day setting. (AR 602.) Ms. Rees also opined that Plaintiff is likely to miss more than three days per month due to her conditions, and that Plaintiff's symptoms and related limitations detailed in the questionnaire apply as far back as June 1, 2011. (AR 603.)

On June 9, 2015, Ms. Rees wrote a Narrative Report regarding Plaintiff's condition. (AR 604-05.) Therein, Ms. Rees opined that "unresolved trauma experiences causes [Plaintiff] to experience a 'freeze' response, which manifests in her body and limiting her physical ability to sustain typical daily activities, like working eight hours a day five days a week in a competitive work environment." (AR 604.)

Dr. Boyle's and Ms. Rees's medical opinions were contradicted by the opinions of two state agency psychological consultants, Dr. Tasneem Khan, Ed.D. (AR 54-74), and Dr. Elliot Salk, Ph.D. (AR 76-93). Drs. Khan and Salk opined that Plaintiff had greater abilities than those identified in Dr. Boyle and Ms. Rees' opinions. The ALJ could therefore

discount Dr. Boyle and Ms. Rees' opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31. Plaintiff concedes that Ms. Rees is not an acceptable medical source. (Doc. 10 at 16.)

In assessing the medical opinions of Drs. Boyle, Khan, Salk, and Ms. Rees, the ALJ provides the following analysis:

> Of these four sources, the ones given greatest weight are the opinions from Drs. Khan and Salk. Dr. Boyle and Ms. Rees both gave more restrictive limitations but their opinions are not supported by the full medical evidence of record. One such example is the lack of inclusion of the claimant's ability to act as the sole caretaker, guardian, and parent of her daughter and yet is apparently unable to interact with any other individual and the inability to sustain concentration necessary to perform simple work activities when she does more than that with her daughter. As such, the two treating sources did not consider the claimant's daily capabilities when giving their opinions or her involvement in a CNA training program. Therefore, greater weight is given to the opinions of Drs. Khan and Salk and little weight to the opinions of Dr. Boyle and Ms. Rees.

(AR 26-27.)

The ALJ's opinion is not the model of clarity, but it appears the ALJ discounts the opinions of Dr. Boyle and Ms. Rees for two reasons: (1) their opinions are not consistent with the medical record as a whole, and (2) their opinions are not consistent with Plaintiff's reported daily activities, including being the sole caretaker for her daughter and attending a CNA training program. (AR 26-27.)

### a. Inconsistent with Record as a Whole.

The ALJ's first reason for discounting Dr. Boyle's and Ms. Rees's medical opinions is that they "are not supported by the full evidence of record." (AR 26.) An ALJ can reject a treating physician's statement if it is "unsupported by the record as a whole or by objective medical findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). But specific evidence must support this finding. *Id.* at 1138; *Spendlove v. Comm'r*, No. CV-17-08157-PCT-DGC, 2018 WL 3633744, at *3 (D. Ariz. July 31, 2018) (ALJ did not properly reject doctor's opinion where he did not identify any specific inconsistency within the notes).

Here, the ALJ fails to provide an explanation as to how Dr. Boyle's opinion is

inconsistent with the record. (*See* AR 26.) To be sure, the ALJ provides an "example" to support his claim, but the 56-word run-on sentence[4] amounts to little more than word salad that is better classified as a critique on Plaintiff's daily activities. Nothing in the ALJ's opinion references, cites, or describes in what ways Dr. Boyle's or Ms. Rees's opinions are contradicted by medical evidence in the record. As discussed above, that lack of analysis is error. *See Embrey*, 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Accordingly, the Court finds that the ALJ's first reason for discounting the medical opinions of Dr. Boyle and Ms. Rees is not specific and legitimate.

### b.  Daily Activities.

The ALJ's second reason for discounting the medical opinions of Dr. Boyle and Ms. Rees is that they are inconsistent with Plaintiff's reported daily activities. (AR 26-27.) Specifically, the ALJ identified two activities Plaintiff reportedly engaged in that he found inconsistent with the medical opinions of Dr. Boyle and Ms. Rees: (1) Plaintiff's daily care of her daughter; and (2) Plaintiff's involvement in a CNA training program. (AR 26-27.)

An ALJ may consider the inconsistency between a physician's opinion and a claimant's daily activities as a specific and legitimate reason for discounting that physician's opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). But an ALJ must do more than simply identify that an inconsistency exists; an ALJ must explain *how* a claimant's daily activities are inconsistent with a physician's medical opinion. *See Trevizo*, 871 F.3d at 676 (finding an ALJ's reliance on a claimant's responsibilities caring for her young adoptive children to be insufficient to discount a physicians' opinion where the ALJ failed to "develop a record regarding the extent to which and the frequency with which [the claimant] picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations," or determine "whether [the claimant] cared for the children alone or with the

---

[4] "One such example is the lack of inclusion of the claimant's ability to act as the sole caretaker, guardian, and parent of her daughter and yet is apparently unable to interact with any other individual and the inability to sustain concentration necessary to perform simple work activities when she does more than that with her daughter." (AR 26.)

assistance of her grandchildren or other family members.").

Here, the ALJ fails to identify how Plaintiff's daily activities conflict with the medical opinions of Dr. Boyle and Ms. Rees. The Commissioner argues that the ALJ's decision is supported by the record, which shows Plaintiff's mental functioning was sufficiently intact for Plaintiff to get her daughter from school, pick her up from activities, and help her with her homework – sometimes for hours. (AR 225, 550, 553, 643, 655, 660, 729, 863.) Furthermore, in 2012, Plaintiff reported participating in and completing CNA training program – a "medium work" job. (AR 402, 554.)

The Commissioner's points are well taken, but ultimately unpersuasive because it amounts to a request for the Court to engage in improper *post hoc* rationalizations of the ALJ's decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). The ALJ did not detail how Plaintiff's caring for her child, or participation in a CNA training course conflicts with the medical opinions of Dr. Boyle and Ms. Rees (*see* AR 25-27), and that failure is error. *See Trevizo*, 871 F.3d at 676. Accordingly, the Court cannot find that the ALJ provided specific and legitimate reasons for discounting the medical opinions of Dr. Boyle and Ms. Rees.

**B.     The ALJ Did Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

At the hearing, Plaintiff testified to the following facts. Plaintiff was 52 years old at the time of the hearing, and has two bachelor degrees. At various times between 2002 and 2011, Plaintiff was employed as a special education teacher, medical coder, and teachers aid. Plaintiff last worked in 2011 as a teacher's aid for Flagstaff Unified School District, a job from which Plaintiff asserts she was fired "because I missed so much work." (AR 40.) Plaintiff did not file for unemployment following her termination.

Plaintiff was diagnosed with fibromyalgia in 2012. Plaintiff states that she has "pain in [her] knees and [her] hips and between [her] shoulders" and "the pain causes [her] to be tired and sometimes [she] feel[s] confused and not able to organize things." (AR 41-42.) Plaintiff further testified that she has "really bad nightmares that are very disturbing" and that she has "always had depression." (AR 42.) Plaintiff asserts that her pain varies between "a five and seven" but she is able to manage it from going higher by knowing when to rest. (AR 45.) Plaintiff claims she "spend[s] two days a week probably flat from something, from overexerting or anticipating something that [she] is going to need extra energy for." (AR 45.) Plaintiff's pain prevents her from sitting for more than 10 minutes at a time, or from standing for more than 10-15 minutes at a time. (AR 46.)

The ALJ found Plaintiff's testimony is not fully credible for three reasons: (1) Plaintiff has provided inconsistent statements that detract from her disability allegations; (2) Plaintiff's daily activities are inconsistent with Plaintiff's reported symptoms; and (3) the objective medical evidence does not align with Plaintiff's complaints. (AR 23-24.) The Court finds that the ALJ's first reason constitutes a clear and convincing reason for discounting Plaintiff's symptom testimony.

"In evaluating the claimant's testimony . . . the ALJ may consider inconsistencies

either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112-13. "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citations omitted). *See also Audra H. v. Berryhill*, No. CV18-8129-PCT-DGC, 2019 WL 1643748, at *7 (D. Ariz. Apr. 16, 2019).

In his decision, the ALJ identified several inconsistencies in Plaintiff's testimony. (AR 23-24.) To wit, Plaintiff testified at the hearing that she stopped working "because of her conditions" (AR 40), but in April 2012, Plaintiff reported to her medical provider that "she is now training as a CNA for her profession, as she was a special ed aid in the school district and got laid off from work due to downsizing." (AR 402.) Additionally, in a July 2012 presurgery psychological examination, Plaintiff reported that "she spent the last year transitioning into healthcare field and has earned her CNA all but final examination" and that she "is considering going into nursing." (AR 303.) Plaintiff gave no reason for what prompted her transition. (*See* AR 303.) The ALJ found Plaintiff's reported symptoms to be inconsistent with Plaintiff's reported ability to train for a job that requires moderate exertion and public contact. (*Id.* at 24.) The Court agrees.

There can be little doubt that completion of a CNA training program indicates capacities that are transferable to a work setting. Nor did the ALJ err by finding Plaintiff's inconsistent representations regarding her work and educational history to detract from Plaintiff's credibility. The Court finds the ALJ's first reason for discounting Plaintiff's symptom testimony to be specific, clear and convincing. *See Vasquez*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ's second reason for discounting Plaintiff's symptom testimony is that Plaintiff's daily activities do not align with her disability claims. (AR 25.) Specifically, the ALJ found that Plaintiff's ability to take care of her daughter, who was eight years old

in 2012, throughout her alleged time of disability was inconsistent with Plaintiff's reported symptoms. (AR 25.) But the Ninth Circuit has cautioned ALJ's against using childcare activities to contradict plaintiff testimony. *See Trevizo*, 862 F.3d at 987 (finding an ALJ erred by relying on a plaintiff's reported child care activities when "there is almost no information in the record about [plaintiff's] childcare activities").

This case may be distinguishable from *Trevizo*. Unlike *Trevizo*, where almost no information about plaintiff's childcare activities was demonstrated in the record, here there is some evidence in the record regarding Plaintiff's care of her daughter[5]. But the record is not clear regarding the extent and frequency to which Plaintiff's care of her daughter occurred. What is more, the ALJ failed to discuss much of the evidence that is contained in the record and did not detail how Plaintiff's care of her child demonstrates capacities that are transferable to a work setting. *See Molina*, 674 F.3d at 1113.

Accordingly, the ALJ's second reason for discounting Plaintiff's symptom testimony is not clear and convincing. The ALJ's third reason for discounting Plaintiff's symptom testimony similarly fails for lack of sufficient explanation. However, because the ALJ provided other legally sufficient reasons for discounting Plaintiff's symptom testimony, to the extent the ALJ erred on the second and third points, the error was harmless. *See Molina*, 674 F.3d at 1111 (an error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate non-disability determination).

**F.     Remand.**

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons

---

[5] The record contains claims by Plaintiff that she is capable of caring for her daughter and getting out for exercise classes (AR 231), and that Plaintiff has taken her daughter out of school when she was ill (AR 881). The record shows that Plaintiff regularly helps her daughter with homework, sometimes for hours (AR 231-32, 655, 729).

for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

Here, factors two and three are easily satisfied. The Court has found that the ALJ failed to provide a legally sufficient reason for rejecting the opinions of Dr. Epstein, Dr. Boyle, and Ms. Rees, and if credited as true, Plaintiff's severe physical and psychological limitations detailed by those opinions would require the ALJ to find that Plaintiff is disabled.

The first factor, however, is a closer call. There are undoubtedly conflicts in the record that could be resolved with further fact-finding. Specifically, the record shows that Plaintiff was capable of completing a CNA training program, regularly assisting her daughter with homework – sometimes for hours, and attending exercise classes on a regular basis. Clarification as to what those activities entailed may assist in determining whether they are inconsistent with Plaintiff's impairments. Additionally, further development of the record would assist in clarifying medical evidence that currently paints a contradictory picture of Plaintiff's abilities.[6]

To the extent the record does not need further development, the Court still has substantial doubt that Plaintiff is in-fact disabled. In short, Plaintiff has made inconsistent representation about potentially significant capabilities, and the medical record available

---

[6] For example, Dr. Barnwell and Dr. Epstein opined that Plaintiff has no functional use of her hands, but a vast majority of Dr. Barnwell's treatment notes report that Plaintiff has normal control of her hands. Additional explanation of Plaintiff's limitations from her physicians may aid the ALJ in properly assessing Plaintiff's RFC.

appears to contradict both the limitations proposed by Plaintiff's symptom testimony and the opinions of her medical team. On remand, the ALJ must address these inconsistencies in the record and clearly state how they contradict the symptom or medical testimony at issue.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an further proceedings consistent with this Order. The Clerk shall enter judgment and **terminate** this case.

Dated this 27th day of September, 2019.

Honorable John Z. Boyle
United States Magistrate Judge